UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-mj-02278-AOR

UNITED STATES OF AMERICA

v.

MICHELLE TROCCOLI BERRY and
MICHAEL WILLIAMS,

    Defendants.
_____/

FILED BY ____ER____ D.C.

Feb 11, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___Yes _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___Yes _X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ___Yes _X_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _/s/ Will Rosenzweig_
Will J. Rosenzweig
Assistant United States Attorney
U.S. Attorney's Office – SDFL
Court ID No. A5502698
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9403
Fax: (305) 530-7976
Email: Will.Rosenzweig@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Michelle Troccoli Berry | ) | Case No. 1:21-mj-02278-AOR |
| and | ) | |
| Michael Williams, | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 5-10, 2021__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel Borja, Postal Inspector, USPIS
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Facetime

Date: __02/11/2021__

_____
*Judge's signature*

City and state: __Miami, Florida__     Honorable Alicia M. Otazo-Reyes
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Borja, being first duly sworn, hereby depose and state as follows:

I. **INTRODUCTION**

1. I am employed as a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since June of 2012. I am currently assigned to the Miami Division of the USPIS, specifically to the Homeland Security Team. I am assigned to investigate the unlawful transportation of contraband, including controlled substances, through the U.S. Mail. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7). I am an officer of the United States empowered by law to conduct investigations and to make arrests for crimes furthered through the use of the U.S. Mail, for crimes connected to the U.S. Postal Service ("USPS") and property of the USPS, and for other postal offenses, as set forth in 18 U.S.C. § 3061, as well as violations of Title 21 of the United States Code, Controlled Substances Act. In addition to conducting multiple Title 21 controlled substances investigations involving the use of the U.S. Mail, I have also participated in numerous interdiction operations targeting parcels containing all types of contraband, both in my duty stations and elsewhere in the continental United States. As a result, I am familiar with known drug trafficking source and destination areas, various smuggling methods and techniques used by drug traffickers, and the methods of packaging illicit contraband.

2. This affidavit is submitted in support of a criminal complaint charging that from on or about February 5, 2021, through February 10, 2021, MICHELLE TROCCOLI BERRY and MICHAEL WILLIAMS, did knowingly and willfully conspire with each other and with other persons known and unknown, to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule I controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(viii); all in violation of Title 21, United States Code, Section 846.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit contains only that information necessary to support probable cause for the applied for criminal complaint. It is not intended to include each and every fact and matter observed by me or known to the government regarding the investigation.

## II. PROBABLE CAUSE

4. On February 6, 2021, USPIS and the Drug Enforcement Administration ("DEA") identified and seized a white rectangular shipping box with USPS Priority Mail Express label attached and USPS tracking number EJ009029182US in transit at the USPS Jose Marti Post Office, located in Miami, Florida (the "Miami Parcel"). The Miami Parcel had the return address "William Smith, 4601 Casa Oro Dr., Yorba Linda, CA 92886" and shipping address "Britanny Smith, 2184 NW 17th St., Miami, FL 33125" (the "Miami Residence"), and was identified by law enforcement through USPIS database searches as suspected of containing narcotics. The label was identified as handwritten and with a purchased cost of $74.85 paid in cash. The Miami Parcel was shipped on February 5, 2021, from a USPS Post Office located in California.

5. USPIS and DEA Miami conducted a postal database search on the address associated with the Miami Residence. The database search revealed that the Miami Parcel and other previously delivered USPS Priority Mail Express parcels were recently shipped from Arizona and California to the Miami Residence.

6. Based on open-source searches, law enforcement confirmed that the Miami Parcel's return address is fictitious, and that the nominal sender, "William Smith," is not associated

with the return address. In my training an experience, as explained in more detail below, individuals who ship narcotics using mail carriers such as the USPS often use fictitious return addresses in an effort to disassociate themselves from the package.

7. Also based on open-source searches, law enforcement identified that the recipient's name, "Britanny Smith," is not associated with the Miami Residence.

8. USPIS requested assistance for a narcotics detection canine. A DEA Task Force Officer and his canine partner, "Logan," conducted a controlled, open-air sniff on a line of five parcels, which included the Miami Parcel. Logan provided a positive alert to the presence of narcotics in the Miami Parcel and not to any of the other parcels. Logan is trained in the detection of narcotics and has proven reliable in the past.

9. Law enforcement identified the Miami Residence as belonging to BERRY in open source database checks. Furthermore, law enforcement identified that BERRY's driver's license lists the Miami Residence as her home address.

10. BERRY has previously attempted to retrieve another package, which also contained methamphetamine. On December 31, 2020, USPIS seized a USPS Priority Mail Express package sent to an address in Hollywood, Florida (the "Hollywood Parcel") also bearing fictitious sender and recipient names. After obtaining a search warrant for the seized parcel (21-MJ-6004-Hunt-SEALED), law enforcement searched the package and discovered approximately two (2) pounds of methamphetamine inside.

11. During an investigation into the Hollywood Parcel, law enforcement observed BERRY twice attempting to retrieve the Hollywood Parcel from the USPS delivery carrier on foot and twice attempting to locate the parcel at different post offices.

12. Based on my training and experience, narcotics coming from Mexico are commonly repackaged in Arizona and California and mailed throughout the country using the USPS, among other carriers. Based on my experience, shipment of the Miami Parcel met several other hallmarks of narcotics shipments. First, individuals will often use USPS Priority Mail Express when shipping narcotics to avoid any delays in the shipping process. Second, it is common for individuals shipping narcotics to pay in cash to hide the sender's identity. Third, individuals shipping narcotics will use fictitious names on labels to avoid associating themselves with the parcel. Finally, the positive alert by Logan corroborated my belief that the Miami Parcel contained narcotics.

13. Based on my training and experience, the events and circumstances described above are common to narcotics traffickers who utilize various shipping providers, such as the United States Postal Service, to conduct their illegal narcotics activities.

14. Based on the foregoing, I obtained a federal search warrant for the Miami Parcel (Case No. 21-MJ-6068-SNOW-SEALED).

15. On February 9, 2021, law enforcement executed the search warrant on the Miami Parcel. Law enforcement opened the Miami Parcel and found a large plastic envelope surrounded by cotton substances. Inside the plastic envelope, I found three bundles of a crystalized substance of suspected methamphetamine wrapped in plastic seals weighing a total of approximately 1.5 kilograms. Due to the health risks of testing certain narcotics which could be contained within the substance discovered, law enforcement is unable to conduct field-testing of the recovered substances and has submitted the narcotics to DEA Southeast Laboratory for laboratory testing.

16. Based on the foregoing, I obtained a federal tracking warrant for the Miami Parcel (Case No. 21-MJ-02256-AOR-SEALED) to install a tracking device and beacon in package

containing sham methamphetamine in aid of a controlled delivery. I also obtained a federal anticipatory search warrant (Case No. 21-MJ-02255-AOR-SEALED) granting law enforcement the authority to search the Miami Residence on the condition that an individual or individuals took the Miami Parcel into the Miami Residence and opened it, thereby triggering the beacon.

17. On February 10, 2021, law enforcement executed the tracking warrant by installing a GPS tracking device and beacon into the Miami Parcel containing sham methamphetamine and then placed it outside the front door of the Miami Residence.

18. Approximately half an hour later, BERRY opened the front door of the Miami Residence, picked up the Miami Parcel, and carried it inside. Using the tracking device, law enforcement surveilled the location of the package. Approximately an hour later, WILLIAMS arrived at the Miami Residence and went inside.

19. Approximately an hour later, law enforcement received a signal from the beacon. According to the GPS tracker, the Miami Parcel remained in the Miami Residence from the time BERRY took the parcel inside until the beacon indicated that the box was opened.

20. Law enforcement then announced its presence and knocked on the door to recover the tracking device and beacon and execute the search warrant for the Miami Residence. Moments later, law enforcement observed WILLIAMS attempting to jump out of a side window of the Miami Residence, which was a one-story residence. When an officer announced his presence and requested that WILLIAMS stop, WILLIAMS went back inside the house. Moments later, law enforcement observed WILLIAMS throwing the sham methamphetamine out of the same window.

21. BERRY subsequently opened the front door, and law enforcement executed its search warrant. Officers discovered WILLIAMS in bed hiding under the covers in the master bedroom near a minor. Law enforcement also found the GPS tracker and beacon lying on the floor

just inside the front door and the empty cardboard box of the Miami Parcel lying near the window out of which WILLIAMS threw the sham drugs.

22. A search of the house revealed, among other items, a pipe suspected to be used for smoking methamphetamine, a dollar bill with approximately 1 gram of white powder inside suspected to be crushed crystal methamphetamine, a baggie containing approximately 1-2 grams of white powder suspected to be crushed crystal methamphetamine, and a scale with white powder residue. As described above, law enforcement is unable to conduct field-testing of the recovered substances and will submit the substances to DEA Southeast Laboratory for laboratory testing. Based on my training and experience, the crystalized substance found in the residence is consistent with crushed crystal methamphetamine.

23. In a recorded, post-*Miranda* interview, BERRY admitted that she knew that the Miami Parcel contained crystal methamphetamine and stated that WILLIAMS also knew that the package contained methamphetamine. BERRY stated that WILLIAMS told her that he wanted to see the methamphetamine because he was low on money and wanted to make extra money. BERRY further admitted that she knew that the Hollywood Parcel had contained methamphetamine and that she attempted to pick up that parcel on multiple occasions.

24. In a recorded, post-*Miranda* interview, WILLIAMS denied knowledge of the contents of the parcel and denied attempting to jump out of the side window in the Miami Residence and throwing the sham methamphetamine out of that same window. WILLIAMS was the only adult male inside the Miami Residence at the time of the search.

### III. CONCLUSION

25. Based on the facts outlined above, I respectfully submit that there is probable cause to believe that BERRY and WILLIAMS conspired to possess with intent to distribute 500 grams

or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule I controlled substance, in violation of 21 U.S.C. § 846.

**FURTHER AFFIANT SAYETH NAUGHT.**

*D. Borja*
Daniel Borja, Postal Inspector
United States Postal Inspection Service

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by:
Facetime
(specify reliable electronic means).

Date: 2/11/21

HONORABLE ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE